**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,**<br><br>　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**OPTICSPLANET, INC., d/b/a ECENTRIA, an Illinois corporation,**<br><br>　　　　**Defendant.** | **Civil Action No. 1:26-cv-01072** |

## DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT

Defendant, OPTICSPLANET, INC., d/b/a ECENTRIA ("Optics Planet"), by and through its undersigned attorneys, answers the Complaint for Patent Infringement of the Plaintiffs, ABC IP, LLC and RARE BREED TRIGGERS, INC. ("Plaintiffs"), as follows:

## PARTIES

1.　　ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

**RESPONSE:** Optics Planet is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 1, and therefore they are denied.

2.　　Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

**RESPONSE:** Optics Planet is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 2, and therefore they are denied.

1

3.     Upon information and belief, Defendant is an Illinois corporation, with an established place of business at 3150 Commercial Ave, Northbrook, IL 60062.

**RESPONSE:** Optics Planet admits the allegations in Paragraph 3.

### JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85.

**RESPONSE:** Optics Planet admits that the Complaint purports to allege a civil action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85. Optics Planet denies that Plaintiffs have stated any valid claim in this action.

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

**RESPONSE:** Optics Planet admits the allegations in Paragraph 5.

6.     Personal jurisdiction over Defendant is proper in this District because the Defendant regularly conducts business in this District and has therefore purposely availed himself of the privileges and benefits of the laws of the State of Illinois.

**RESPONSE:** Optics Planet admits the allegations in Paragraph 6.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District.

**RESPONSE:** Optics Planet admits venue is proper in this District pursuant to 28 U.S.C. § 1400(b), and that Optics Planet has a regular and established place of business in this District. Optics Planet denies the remaining allegations in Paragraph 7.

## BACKGROUND

8.       This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent") ("the Asserted Patents").

**RESPONSE:** Optics Planet admits that the Complaint purports to allege direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent") ("the Asserted Patents"). Optics Planet denies that Plaintiffs have stated any valid claim in this action.

9.       The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

**RESPONSE:** Optics Planet admits that Exhibit A to the Complaint purports to be a copy of the '247 Patent, and that the '247 Patent issued on July 16, 2024. Optics Planet denies the remaining allegations of Paragraph 9.

10.      The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

**RESPONSE:** Optics Planet admits that Exhibit B to the Complaint purports to be a copy of the '784 Patent, and that the '784 Patent issued on July 9, 2024. Optics Planet denies the remaining allegations of Paragraph 10.

11.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit C.

**RESPONSE:** Optics Planet admits that Exhibit C to the Complaint purports to be a copy of the '223 Patent, and that the '223 Patent issued on December 24, 2019. Optics Planet denies the remaining allegations of Paragraph 11.

12.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit D.

**RESPONSE:** Optics Planet admits that Exhibit D to the Complaint purports to be a copy of the '003 Patent, and that the '003 Patent issued on August 15, 2023. Optics Planet denies the remaining allegations of Paragraph 12.

13.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit E.

**RESPONSE:** Optics Planet admits that Exhibit E to the Complaint purports to be a copy of the '336 Patent, and that the '336 Patent issued on July 16, 2024. Optics Planet denies the remaining allegations of Paragraph 13.

14.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit F.

**RESPONSE:** Optics Planet admits that Exhibit F to the Complaint purports to be a copy of the '807 Patent, and that the '807 Patent issued on April 15, 2025. Optics Planet denies the remaining allegations of Paragraph 14.

15.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO")..

**RESPONSE:** Optics Planet is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 15, and therefore they are denied.

16.     Rare Breed is the exclusive licensee of the Asserted Patents.

**RESPONSE:** Optics Planet is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 16, and therefore they are denied.

17.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

**RESPONSE:** Optics Planet is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 17, and therefore they are denied.

18.     Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 18.

### THE [ALLEGED] INVENTIONS

19.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the

trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

**RESPONSE:** Optics Planet admits the allegations in Paragraph 20.

20.      In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

**RESPONSE:** Optics Planet admits that the disconnector (in a standard AR-pattern firearm) holds the hammer in a cocked position until the trigger sear can engage the hammer.  In a standard semiautomatic AR-pattern firearm (i.e., with no modified or customized components), this prevents the firearm from either firing multiple rounds on a single pull of the trigger or from

allowing the hammer to follow the bolt carrier as it returns to battery. Optics Planet denies the remaining allegations in Paragraph 19.

21.     In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

**RESPONSE:** Optics Planet admits that at least some forced-reset trigger designs utilize the cycling of the bolt carrier to cause the trigger member to be forced to the reset position (even where the user is maintaining and has not released pressure on the trigger). Optic Planet denies the remaining allegations in Paragraph 20.

22.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

**RESPONSE:** Optics Planet admits that the '247 Patent generally discloses a trigger mechanism for a semi-automatic firearm that includes selectable modes of operation. Optics Planet denies the remaining allegations in Paragraph 22 to the extent they characterize the scope, operation, or effect of the '247 Patent beyond the express language of the patent, which speaks for itself.

23.    The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

**RESPONSE:** Optics Planet admits that the '784 Patent purports to disclose and claim certain trigger-related mechanisms for semi-automatic firearms. Optics Planet denies the remaining allegations in Paragraph 23 to the extent they characterize the scope, function, purpose, or effect of the '784 Patent beyond the express language of the patent, which speaks for itself.

24.    The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

**RESPONSE:** Optics Planet admits that the '223 Patent purports to disclose and claim certain trigger-related mechanisms for semi-automatic firearms. Optics Planet denies the remaining allegations in Paragraph 24 to the extent they characterize the scope, operation, or effect of the '223 Patent beyond the express language of the patent, which speaks for itself.

25.    The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two

distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

**RESPONSE:** Optics Planet admit that '003 Patent, the '336 Patent, and the '807 Patent purport to disclose and claim certain trigger-related mechanisms. Optics Planet denies the remaining allegations in Paragraph 25 to the extent they characterize the scope, operation, similarity, or claimed subject matter of those patents beyond their express language, which speaks for itself.

26. The claims of the patents define the scope of the patented inventions.

**RESPONSE:** Optics Planet admits that claims in patents define the scope of the inventions, but deny the allegations in Paragraph 26 to the extent it alleges that the Asserted Patents define patentable inventions.

## THE [ALLEGEDLY] INFRINGING DEVICES

27. On information and belief, Defendant is currently making, using, selling, and/or offering for sale the Three-Position "Atrius Forced Reset Selector" ("the First Infringing Device"), which embodies the technology claimed in at least the '247 and '784 Patents.

**RESPONSE:** Optics Planet admits that is selling a product called the "Atrius Forced Reset Selector." Optics Planet denies the remaining allegations of Paragraph 27.

28. On information and belief, Defendant sells and/or offers for sale the First Infringing Device via its website https://www.opticsplanet.com.

**RESPONSE:** Optics Planet admits that is sells and offers for sale a product called the "Atrius Forced Reset Selector" via its website https://www.opticsplanet.com.

29. On information and belief, Defendant sells or offers for sale the First Infringing Device in two variations. Exemplary photographs of both product variations of the First Infringing Device from Defendant's website are shown below:

    a.   A single lever version; and

    b.   An ambidextrous lever version









**RESPONSE:** Optics Planet admits that it is selling a product called the "Atrius Forced Reset Selector" in two variations. Optics Planet admits that the Paragraph 29 contains photographs of the single lever and ambidextrous variations of the "Atrius Forced Reset Selector" taken from Optics Planet's website.

30. The First Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by rotating the safety selector between positions.

**RESPONSE:** Optics Planet admits that the "Atrius Forced Reset Selector" can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by rotating the safety selector between positions.

31.     On information and belief, Defendant is currently making, using, selling, offering for sale, and/or importing a forced reset trigger assembly, which includes a three-position safety selector, known as the "Partisan Disruptor" ("the Second Infringing Device"), which embodies the technology claimed in the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent.

**RESPONSE:** Optics Planet admits that it is selling a product called the "Partisan Disruptor" having a forced reset trigger assembly, which includes a three-position safety selector. Optics Planet denies the remaining allegations of Paragraph 31.

32.     On information and belief, Defendant sells and/or offers for sale the Second Infringing Device via the website https://www.opticsplanet.com. Exemplary photographs of the Second Infringing Device (in Green) are shown below:



**RESPONSE**: Optics Planet admits that is selling a product called the "Partisan Disruptor" via its website https://www.opticsplanet.com. Optics Planet admits that Paragraph 32 contains photographs of the product called the "Partisan Disruptor."

33. The Second Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions.

**RESPONSE**: Optics Planet admits that the Partisan Disruptor can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions.

34. When the Second Infringing Device operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 34 to the extent they purport to describe the internal mechanical operation of the Partisan Disruptor. Defendant admits only that, in forced reset mode, the product is designed to operate as a semi-automatic trigger mechanism in which the cycling of the firearm contributes to resetting the trigger. Defendant denies the remaining allegations of Paragraph 34.

35. When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer

13

from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

**RESPONSE:** Optics Planet admits that, in its standard semi-automatic mode, the Partisan Disruptor operates as a semi-automatic trigger mechanism in which one round is discharged per trigger pull and the trigger must reset before a subsequent round may be fired. Defendant denies the remaining allegations in Paragraph 35 to the extent they purport to describe the specific internal mechanical operation of the product.

36.     When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**RESPONSE:** Optics Planet admits that in forced reset semi-automatic mode, the Partisan Disruptor operates as a semi-automatic trigger mechanism in which the cycling of the firearm contributes to resetting the trigger to permit subsequent firing after reset. Defendant denies the remaining allegations in Paragraph 36, including the specific descriptions of internal component interactions and the characterization that a subsequent shot may be fired "without manually releasing the trigger member," as stated therein.

## COUNT I – [ALLEGED] INFRINGEMENT OF THE '247 PATENT

37.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

**RESPONSE:** To the extent a response to Paragraph 37 is necessary, Optics Planet repeats and incorporates by reference its preceding responses to Paragraphs 1-36 as if fully set forth herein.

38.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the First and Second Infringing Devices.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 38.

39.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 39.

40.     An exemplary comparison of the First Infringing Device with claim 15 of the '247 Patent, when assembled and used as intended, is illustrated in the chart below:

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  **Super Selector** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Super Selector (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (orange).  (Plaintiff-generated renderings of Super Selector here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
|  | <br><br>**(Hammer Set Position Above)**<br><br>**(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Atrius Super Selector (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. The trigger member (Brown) has a sear. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| | <br>**(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).<br><br><br>**(Disconnector Hook Engaged)** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Atrius Super Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Atrius Super Selector, shown in yellow, in fire control mechanism pocket) |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  (Atrius Super Selector Cam with Lobe and Lever) |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. (Cam and Lobe First Position Above) In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  (Cam and Lobe Second Position Above) |
| whereupon in a standard semi-automatic mode, said cam is in said first position,<br><br><br>rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position.<br><br><br><br>Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery,<br><br><br><br>at which time the user can pull said trigger member to fire the firearm. | Thereafter, the bolt carrier moves forward into battery,<br><br><br><br>at which time the user can pull said trigger member (Brown) to fire the firearm. |

| '247 Patent Claim 15 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |

**RESPONSE:** Optics Planet admits that Paragraph 40 purports to compare the accused product with claim 15 of the '247 Patent. Optics Planet denies the remaining allegations in Paragraph 40.

41.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '247 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the First Infringing Device. One example of this is the promotional material found on Defendant's website (Atrius Development Ambidextrious Forced Reset Selector | $19.99 Off Customer Rated w/ Free S&H) that informs customers to install the device into an AR15:



**RESPONSE:** Optics Planet denies the allegations in Paragraph 41.

42.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 15 of the '247 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 42.

43.     On information and belief, Defendant also contributes to the infringement of the '247 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of the First and Second Infringing Devices, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 43.

44.     Defendant has engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '247 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 44.

45. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 45.

46. By its actions, Defendant's infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 46.

47. By its actions, Defendant's infringement of the '247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 47.

48. Defendant's infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 48.

49. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 49.

50. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 50.

### COUNT II - [ALLEGED] INFRINGEMENT OF THE '784 PATENT

51. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

**RESPONSE**: To the extent a response to Paragraph 51 is necessary, Optics Planet repeats and incorporates by reference its preceding responses to Paragraphs 1-50 as if fully set forth herein.

52. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 Patent. Such unlicensed products include the First and Second Infringing Devices.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 52.

53. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 53.

54. An exemplary comparison of the First Infringing Device with claim 1 of the '784 Patent, when assembled and used as intended, is illustrated in the chart below:

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Atrius Super Selector is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>**Atrius Super Selector**<br>**https://atrius.dev/atrius-forced-reset-selector/** |

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
|  |  **Atrius Super Selector Installed** (Plaintiff-generated renderings of Super Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Atrius Super Selector operates as a locking member and has a first position in which it locks the trigger member against pulling movement. **Locked First Position** |

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
| and a second position where it does not restrict movement of the trigger member, | The Atrius Super Selector is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Atrius Super Selector is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).<br><br> |

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Atrius Super Selector has an upward extending portion (Yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br><br><br><br><br>The body portion (Purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (Blue) |

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
|  |  Once installed, the body portion (Purple) is movably supported by the lower receiver (grey) using the detent (blue). **(section view of body portion (Purple), lower receiver (Grey), and detent (Blue) for clarity)** |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position.  **Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Atrius Super Selector has a body portion (Purple) that is movably supported by the lower receiver. |

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
| |  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Atrius Super Selector has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow). |

| '784 Patent Claim 1 | First Infringing Device (Atrius Super Selector) |
|---|---|
| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.<br> |
| and a deflected position. | The lever is now shown deflected independent of the body.<br> |

**RESPONSE**: Optics Planet admits that Paragraph 54 purports to compare the accused product with claim 1 of the '784 Patent. Optics Planet denies the remaining allegations in Paragraph 54.

55.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the First and Second Infringing Devices. One example of this is the promotional material found on Defendant's website (Atrius Development Ambidextrious Forced Reset Selector | $19.99 Off Customer Rated w/ Free S&H) that informs customers to install the device into an AR15:

---

**Product Info for Atrius Development Ambidextrious Forced Reset Selector**

Looking for an alternative to a Forced Reset FRT Trigger that won't wear down your AR? Then the Atrius Ambidextrous Forced Reset Selector is the perfect upgrade for your rifle. Also known as the Atrius Super Selektor, this drop-in ambidextrous AR-15 safety selector installs in minutes and instantly provides your firearm with three distinct firing modes: Safety, Semi (standard one-shot), and Full-Semi. The third firing mode of the Gun Parts instantly resets the trigger, allowing for much faster trigger pulls and follow-up shots on target. Atrius Development designed this FRS Safety Selector for use with both right- and left-handed shooters, providing crisp, tactile engagement in any situation.

The Atrius Super Selector is built from heat-treated steel complete with a corrosion-resistant finish, providing long-lasting durability in rain, mud, and other harsh environments. This Forced Reset Selector is compatible with all Mil-Spec AR-15 platforms chambered in .223 Rem, 5.56 NATO, or .300 Blackout. Pick up the Atrius Super Selector today to greatly increase your trigger speed without wearing down your rifle.

**Specifications for Atrius Development Ambidextrious Forced Reset Selector:**

| | |
|---|---|
| Manufacturer: | Atrius Development |
| Color: | Black |
| Gun Make: | AR Platform |
| Gun Model: | AR-15 |
| Fabric/Material: | Steel |
| Hand: | Ambidextrous |

---

**Features of Atrius Development Ambidextrious Forced Reset Selector**

- Drop-In Installation Swap out your factory safety in minutes and experience the next level of firearm manipulation (some fitment may be required).
- Runs with Mil-Spec Fire Control Groups Seamlessly integrates with standard AR fire control groups, ensuring flawless function and longevity without modification.
- Hardcore Durability Crafted from heat-treated, 4140 steel and coated in a corrosion-resistant finish, the Atrius FRS laughs in the face of wear and tear. Rain, mud, sweat it eats it all for breakfast.
- Mechanically Leveraged Design Our Forced Reset Selector (FRS) reduces wear on your rifle, preserving your weapons longevity unlike forced-reset triggers (FRTs) that accelerate internal component degradation.
- Ultra-Smooth Engagement Crisp, tactile clicks with no mushy nonsense. Designed for 90-degree throw engagement.
- Positive Positioning Without Slippage Engineered for rock-solid engagement, eliminating the risk of unintentional movement mid-fire, keeping you in full control at all times.
- Aggressive Ergonomics Textured, chamfered, and purpose-built for speed. Your thumb finds the selector instantly, even under stress, with no fumbling, no hesitation just pure control.

---

**RESPONSE**: Optics Planet denies the allegations in Paragraph 55.

56.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 1 of the '784 Patent.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 56.

57.     On information and belief, Defendant also contributes to the infringement of the '784 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of the First and Second Infringing Devices, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 57.

58.     Defendant has engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '784 Patent.

**RESPONSE**:  Optics Planet denies the allegations in Paragraph 58.

59.     By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 59.

60.     By its actions, Defendant's infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 60.

61.     By its actions, Defendant's infringement of the '784 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

**RESPONSE**:  Optics Planet denies the allegations in Paragraph 61.

62.     Defendant's infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 62.

63.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 63.

64.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 64.

**COUNT III – [ALLEGED] INFRINGEMENT OF THE '223 PATENT**

65.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

**RESPONSE:**  To the extent a response to Paragraph 65 is necessary, Optics Planet repeats and incorporates by reference its preceding responses to Paragraphs 1-64 as if fully set forth herein.

66.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent. Such unlicensed products include the Second Infringing Device.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 66.

67.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

**RESPONSE**: Optics Planet denies the allegations in Paragraph 67.

68.     An exemplary comparison of the Second Infringing Device with Claim 4 of the '223 patent, when assembled and used as intended, is illustrated in the chart below:

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Second Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | 

**Fire Control Mechanism Pocket**

An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.



**Bolt Carrier** |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Second Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |  Hammer and trigger pins<br><br>Openings for hammer and trigger assembly pins<br>Housing<br><br>**(Plaintiff–generated renderings of the Partisan Disruptor here and below)** |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis<br><br><br><br><br><br><br><br><br><br><br><br><br>between set and | The Second Infringing Device includes a hammer (**Blue**) with a sear notch and is mounted in the housing to pivot on a transverse axis.<br><br> Hammer<br>Sear notch |

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| released positions; | **(Set position)**<br><br>**(Released position)** |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br>between set | The Second Infringing Device has a trigger member (**Green**) that has a sear and is mounted in a housing to pivot on a transverse axis. |

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| and released positions, |  (Set position) |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, |  (Released position) |
| | The trigger member (**Green**) has a surface positioned to be contacted by a surface of the hammer (**Blue**) |
| the contact causing the trigger member to be forced to the set position; | |

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
|  |  |

The hammer (**Blue**) pivots rearward causing the trigger (**Green**) to be forced to the set position.

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| a locking bar pivotally mounted in the housing | The Second Infringing Device includes a locking bar (**Red**) that is pivotally mounted in the housing.<br><br> |
| and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar has spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.<br><br><br><br>**(First position mechanically blocked)** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. |

| '223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.<br><br> |

**RESPONSE**: Optics Planet admits that Paragraph 68 purports to compare the accused product with claim 4 of the '223 Patent. Optics Planet denies the remaining allegations in Paragraph 68.

69.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '223 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisantriggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:



**RESPONSE:** Optics Planet denies the allegations in Paragraph 69.

70.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '223 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Devices.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 70.

71.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 4 of the '223 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 71.

72.    On information and belief, Defendant also contributes to the infringement of the '223 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by

Defendant of the components of the Second Infringing Devices, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '223 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 72.

73.     Defendant has engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '223 Patent and that the '223 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '223 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '223 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 73.

74.     By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 74.

75.     By its actions, Defendant's infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 75.

76.     By its actions, Defendant's infringement of the '223 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 76.

77.     Defendant's infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**RESPONSE:**  Optics Planet denies the allegations in Paragraph 77.

78.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 78.

79.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**RESPONSE:**  Optics Planet denies the allegations in Paragraph 79.

### COUNT IV – [ALLEGED] INFRINGEMENT OF THE '003 PATENT

80.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

**RESPONSE:**  To the extent a response to Paragraph 80 is necessary, Optics Planet repeats and incorporates by reference its preceding responses to Paragraphs 1-79 as if fully set forth herein.

81.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

products in a manner that infringes the '003 patent. Such unlicensed products include the Second Infringing Device.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 81.

82.    On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 82.

83.    An exemplary comparison of the Second Infringing Device with claim 4 of the '003 patent, when assembled and used as intended, is illustrated in the chart below:

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Second Infringing Device is a firearm trigger mechanism. Peak describes the "Disruptor" as "an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform" on its website. (https://partisantriggers.com/the-disruptor). |
| a housing having a first pair of transversely aligned openings for | The Second Infringing Device includes a housing (Black) that has a first pair of transversely aligned |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br><br><br>The Second Infringing Device is sold with hammer and trigger pins.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Second Infringing Device includes a hammer (Blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| between set and |  **Hammer** / **Sear catch** **(Plaintiff-generated renderings of the Partisan Disruptor here and below)**  **(Set position)** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| | <br>**(Released position)** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br>between set | The Second Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin<br><br><br>**(Set position)** |

53

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| and released positions, |  **(Released position)** <br><br> The trigger member (**Green**) has a surface positioned to be contacted by a surface of the hammer (**Blue**) |
| said trigger member having a surface positioned to be contacted by a surface of said hammer |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (**Blue**) pivots rearward causing the trigger (**Green**) to be forced to the set position. |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| | **(Set position)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position  **(Released position)** |
| a disconnector having a hook for engaging said hammer | The Second Infringing Device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook  |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger **(Green)** member pin |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Second Infringing Device has a locking member (**Red**) that is mounted in the housing and it pivots on a transverse locking member pin  |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (**Red**) is in the first position, the locking member blocks the trigger (**Green**) from being pulled |

57

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, |   **(First position mechanically blocked)**  When the locking bar (**Red**) is in the second position, it does not prevent the trigger (**Green**) from being pulled |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and |   **(Second position not mechanically blocked)**  The locking member (**Red**) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Second Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br><br><br>**The Disruptor**<br><br>The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi-Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.<br><br>**(https://partisantriggers.com/the-disruptor/)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br><br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | **(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Second Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br>**(Trigger pulled to the rear, hammer first touches the trigger)** |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |  **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook  **(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |  |

**RESPONSE:** Optics Planet admits that Paragraph 83 purports to compare the accused product with claim 4 of the '003 Patent. Optics Planet denies the remaining allegations in Paragraph 83.

84.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '003 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Accused Products. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisantriggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:



**RESPONSE:** Optics Planet denies the allegations in Paragraph 84.

85.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '003 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Devices.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 85.

86.     On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 4 of the '003 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 86.

87.     On information and belief, Defendant also contributes to the infringement of the '003 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by

Defendant of the components of the Second Infringing Devices, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '003 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 87.

88.     Defendant has engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '003 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '003 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 88.

89.     By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 89.

90.     By its actions, Defendant's infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 90.

91.     By its actions, Defendant's infringement of the '003 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 91.

92.     Defendant's infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 92.

93.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 93.

94.     Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 94.

## COUNT V – [ALLEGED] INFRINGEMENT OF THE '336 PATENT

95.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

**RESPONSE:** To the extent a response to Paragraph 95 is necessary, Optics Planet repeats and incorporates by reference its preceding responses to Paragraphs 1-94 as if fully set forth herein.

96.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

65

products in a manner that infringes the '336 patent. Such unlicensed products include the Second Infringing Device.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 96.

97.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 97.

98.     An exemplary comparison of the Second Infringing Device with Claim 3 of the '336 patent, when assembled and used as intended, is illustrated in the chart below:

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Second Infringing Device is a firearm trigger mechanism. Peak describes the "Disruptor" as "an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform" on its website. (https://partisantriggers.com/the-disruptor). |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Second Infringing Device includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| | <br><br>The Infringing Devise is sold with hammer and trigger pins.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Second Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br> |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| | **(Plaintiff-generated renderings of the Partisan Disruptor here and below)** |
| between set and | <br>**(Set position)** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**(Released position)** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Second Infringing Device includes a trigger member (**Green**) that has a sear and is mounted in the housing to pivot on the trigger member pin |

68

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| between set | <br>**(Set position)** |
| and released positions, | <br>**(Released position)**<br><br>The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (**Blue**) pivots rearward causing the trigger (**Green**) to be forced to the set position  |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  (Set position) |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position  (Released position) |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| a disconnector having a hook for engaging said hammer | The Second Infringing Device has a disconnector (**Orange**) that has a hook for engaging the hammer (**Blue**) hook<br><br> |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (**Green**) member pin<br><br> |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Second Infringing Device has a locking member (**Red**) that is mounted in the housing and it pivots on a transverse locking member pin. |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position |  When the locking bar (**Red**) is in the first position, the locking member blocks the trigger (**Green**) from being pulled  **(First position mechanically blocked)** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (**Red**) is in the second position, it does not prevent the trigger (**Green**) from being pulled. |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | <br><br>**(Second position not mechanically blocked)**<br><br>The locking member (**Red**) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Second Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions..<br><br> |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | **The Disruptor**<br><br>The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.<br><br>(https://partisantriggers.com/the-disruptor/)<br><br>While in the forced reset semi-automatic position the disconnect (**Orange**) moves to a position that does not allow the disconnector hook to catch the hammer (**Blue**) hook<br><br><br><br>(Forced reset semi-automatic position) |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | <br><br>**(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Second Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.<br><br><br><br>**(Trigger pulled to the rear, hammer first touches the trigger)** |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| |  (Hammer has now caused the trigger to move to the reset position) |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (Orange) hook from catching the hammer (Blue) hook  (Set position) |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (Green) without manually releasing pressure off the trigger |

**RESPONSE:** Optics Planet admits that Paragraph 98 purports to compare the accused product with claim 3 of the '336 Patent. Optics Planet denies the remaining allegations in Paragraph 98.

99.     On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '336 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting and instructing others to use and/or how to use the Accused Products. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisantriggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:



**RESPONSE:** Optics Planet denies the allegations in Paragraph 99.

100.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '336 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the Second Infringing Devices.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 100.

101.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 3 of the '336 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 101.

102.    On information and belief, Defendant also contributes to the infringement of the '336 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of the Second Infringing Devices, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 102.

103.    Defendant has engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '336 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '336 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 103.

104.    By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 104.

105.    By its actions, Defendant's infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 105.

106.    By its actions, Defendant's infringement of the '336 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 106.

107.    Defendant's infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 107.

108.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 108.

109.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 109.

**COUNT VI – [ALLEGED] INFRINGEMENT OF THE ''807 PATENT**

110.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

**RESPONSE:** To the extent a response to Paragraph 110 is necessary, Optics Planet repeats and incorporates by reference its preceding responses to Paragraphs 1-109 as if fully set forth herein.

111.     In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Second Infringing Device.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 111.

112.     On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 112.

113.     An exemplary comparison of the Second Infringing Device with Claim 1 of the '807 patent, when assembled and used as intended, is illustrated in the chart below:

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Second Infringing Device is a firearm trigger mechanism. Peak describes the "Disruptor" as "an assisted reset trigger . . . designed for fast and hassle-free installation on the AR-15 platform" on its website. (https://partisantriggers.com/the-disruptor). |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Second Infringing Device includes a hammer (**Blue**) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| | hammer is pivoted rearward by rearward movement of a bolt carrier. |
| between set and | **(Plaintiff-generated renderings of the Partisan Disruptor here and below)****(Set position)** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| | <br>**(Released position)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br><br>between set | The Second Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br><br>**(Set position)** |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| and released positions,<br><br><br><br><br><br>said trigger member having a surface positioned to be contacted by a surface of said hammer |  |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (Blue) pivots rearward causing the trigger (Green) to be forced to the set position<br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, |  (Set position) The sear and sear catch are out of engagement in the released position  (Released position) |
| a disconnector having a hook for engaging said hammer hook | The Second Infringing Device has a disconnector (**Orange**) that has a hook for engaging the hammer (**Blue**) hook |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | <br><br>The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis<br><br> |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The Second Infringing Device has a locking member (**Red**) that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position. |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position |  When the locking bar (**Red**) is in the first position, the locking member blocks the trigger (**Green**) from being pulled  **(First position mechanically blocked)** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (**Red**) is in the second position, it does not prevent the trigger (**Green**) from being pulled |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | **(Second position not mechanically blocked)**<br><br>The locking member (**Red**) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Second Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br> |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| | <br>**The Disruptor**<br>The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi-Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.<br>**(https://partisantriggers.com/the-disruptor/)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot and the disconnect (**Orange**) hook catches the hammer hook<br><br><br>**(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Second Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer (**Blue**) to pivot which causes the trigger (**Green**) to be forced to the set position. |

| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| |  **(Trigger pulled to the rear, hammer first touches the trigger)**  **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (**Orange**) hook from catching the hammer (**Blue**) hook. |



| '807 Patent Claim 1 | The Second Infringing Device (Disruptor) |
|---|---|
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | **(Set position)** When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (**Green**) without manually releasing pressure off the trigger. |

**RESPONSE:** Optics Planet admits that Paragraph 113 purports to compare the accused product with claim 1 of the '807 Patent. Optics Planet denies the remaining allegations in Paragraph 113.

114. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '807 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the Accused Products. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisantriggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:



**RESPONSE:** Optics Planet denies the allegations in Paragraph 114.

115.    On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '807 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Devices.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 115.

116.    On information and belief, Defendant knows or should know that such activities induce others to directly infringe one or more of at least claim 1 of the '807 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 116.

117. On information and belief, Defendant also contributes to the infringement of the '807 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendant of the components of the Second Infringing Devices, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '807 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 117.

118. Defendant has engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '807 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '807 Patent.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 118.

119. By its actions, Defendant has injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 119.

120.    By its actions, Defendant's infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

**RESPONSE:**  Optics Planet denies the allegations in Paragraph 120.

121.    By its actions, Defendant's infringement of the '807 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 121.

122.    Defendant's infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285

**RESPONSE:**  Optics Planet denies the allegations in Paragraph 122.

123.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 123.

124.    Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**RESPONSE:** Optics Planet denies the allegations in Paragraph 124.

## **RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF**

Optics Planet denies Plaintiffs are entitled to any of the relief sought in the Prayer for Relief.

## **OPTIC PLANET'S AFFIRMATIVE DEFENSES**

Optics Planet incorporates by reference the foregoing paragraphs in their entirety and asserts the following Affirmative Defenses. Optics Planet asserts the following defenses without

assuming any burden that Optics Planet would not otherwise have, including without admitting or acknowledging that it bears the burden of proof as to any of them. Optics Planet reserves the right to amend its Answer with additional defenses as additional information becomes available.

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Non-Infringement of the Asserted Patents)**

Optics Planet has not infringed and is not infringing, directly, indirectly, contributorily, through the doctrine of equivalents, willfully or otherwise, any valid and/or enforceable claim of the Asserted Patents because, for example and without limitation, the accused products do not meet every element in any valid and/or enforceable claim of the Asserted Patents as properly construed.

### THIRD AFFIRMATIVE DEFENSE
**(Invalidity of the Asserted Patents)**

On information and belief, the Asserted Patents and each and every claim contained therein are invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. § 101 *et seq*.

### FOURTH AFFIRMATIVE DEFENSE
**(No Basis for an Injunction)**

Plaintiffs are not entitled to an injunction because Plaintiffs are not likely to prevail on the merits. Plaintiffs have not suffered and will not suffer irreparable harm because of any conduct by Optics Planet, and Plaintiffs have an adequate remedy at law for its alleged injury.

## ADDITIONAL AFFIRMATIVE DEFENSES

Optics Planet specifically reserves the right to assert such other and further affirmative defenses as are revealed in the course of discovery.

WHEREFORE, Optics Planet respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice and award costs, attorneys' fees and any other relief the Court may deem just and proper to Optics Planet for defending this action.

Respectfully submitted,

Dated: February 23, 2026

By: /s/ Jason S. Shull
Jason S. Shull
  jshull@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 South Wacker Drive, Suite 3600
Chicago, Illinois 60606
Tel.: (312) 463-5000
Fax: (312) 463-5001

**Attorneys for Defendant, OPTICS PLANET, INC., d/b/a OPTICSPLANET**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2026, the foregoing was electronically filed with the

Clerk of the Court using the CM/ECF system.


/s/ Jason S. Shull
**For OPTICS PLANET, INC., d/b/a**
**OPTICSPLANET**