**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>OPTICSPLANET, INC., d/b/a ECENTRIA, an Illinois corporation,<br><br>*Defendant*. | ) | Case No. 1:26-cv-01072<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Optics Planet Inc., d/b/a OpticsPlanet ("OpticsPlanet" or "Defendant"), of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, 10,514,223, 11,724,003, 12,036,336, and 12,274,807 as follows:

**PARTIES**

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. Upon information and belief, Defendant is an Illinois corporation, with an established place of business at 3150 Commercial Ave, Northbrook, IL 60062.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85.

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6. Personal jurisdiction over Defendant is proper in this District because the Defendant regularly conducts business in this District and has therefore purposely availed himself of the privileges and benefits of the laws of the State of Illinois.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District.

**BACKGROUND**

8. This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), and 12,274,807 ("the '807 Patent") ("the Asserted Patents").

9. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

10. The ’784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the ’784 Patent is valid and enforceable. A true and correct copy of the ’784 Patent is attached as Exhibit B.

11. The ’538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the ’538 Patent is valid and enforceable. A true and correct copy of the ’538 Patent is attached as Exhibit C.

12. The ’159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the ’159 Patent is valid and enforceable. A true and correct copy of the ’159 Patent is attached as Exhibit D.

13. The ’223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the ’223 Patent is valid and enforceable. A true and correct copy of the ’223 Patent is attached as Exhibit E.

14. The ’003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the ’003 Patent is valid and enforceable. A true and correct copy of the ’003 Patent is attached as Exhibit F.

15. The ’336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the ’336 Patent is valid and enforceable. A true and correct copy of the ’336 Patent is attached as Exhibit G.

16. The ’807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the ’807 Patent is valid and enforceable. A true and correct copy of the ’807 Patent is attached as Exhibit H.

17. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

18. Rare Breed is the exclusive licensee of the Asserted Patents.

19. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

20. Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## THE INVENTIONS

21. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

24. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

25. The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and

varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

26. The ’538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

27. The ’223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

28. The ’003 Patent, the ’336 Patent, and the ’807 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

29. The claims of the patents define the scope of the patented inventions.

**THE INFRINGING DEVICES**

30. On information and belief, Defendant is currently making, using, selling, and/or offering for sale the Three-Position “Atrius Development Forced Reset Selector” (“the First Infringing Device”), which embodies the technology claimed in at least the ’247, ’159, and ’784 Patents.

31. On information and belief, Defendant sells and/or offers for sale the First Infringing Device via its website https://www.opticsplanet.com.

32. On information and belief, Defendant sells or offers for sale the First Infringing Device in two variations. Exemplary photographs of both product variations of the First Infringing Device from Defendant's website are shown below:

a. A single lever version; and

b. An ambidextrous lever version









33. The First Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by rotating the safety selector between positions.

34. On information and belief, Defendant is currently making, using, selling, offering for sale, and/or importing a forced reset trigger assembly, which includes a three-position safety selector, known as the "Partisan Disruptor" ("the Second Infringing Device"), which embodies the technology claimed in the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent.

35. On information and belief, Defendant sells and/or offers for sale the Second Infringing Device via the website https://www.opticsplanet.com. Exemplary photographs of the Second Infringing Device (in Green) are shown below:




36. The Second Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions.

37. When the Second Infringing Device operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and

trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

38. When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

39. When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

40. On information and belief, Defendant is currently making, using, selling, and/or offering for sale a (3-Position) “Super Safety” (“the Third Infringing Device”), which embodies the technology claimed in at least the ’247, ’784, ’538, and ’159 Patents.

41. On information and belief, Defendant is making, using, selling, and/or offering for sale the Third Infringing Device via its website, https://www.opticsplanet.com/mars-trigger-position-ar-frt-super-safety.html.

42. On information and belief, Defendant sells or offers for sale the Third Infringing Device in multiple variations. Exemplary photographs of both product variations of the Third Infringing Device from Defendant’s website are shown below:

a. As a standalone product

b. Preinstalled in an MP5 Lower







43. The Third Infringing Device can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

## COUNT I – INFRINGEMENT OF THE ’247 PATENT

44. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

45. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’247 Patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’247 Patent. Such unlicensed products include the First and Third Infringing Devices.

46. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’247 Patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents.

47. An exemplary comparison of the First Infringing Device with claim 15 of the ’247 Patent, when assembled and used as intended, is illustrated in the chart below:

| ’247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Atrius Development Forced Reset Selector is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.  **Atrius Forced Reset Selector** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Forced Reset Selector (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (orange).  (Plaintiff-generated renderings of Atrius Development Forced Reset Selector here and below) |

| ’247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.  **(Hammer Set Position Above)**  **(Hammer Released Position Above)** |

| ’247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
| --- | --- |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Atrius Forced Reset Selector (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. The trigger member (Brown) has a sear.  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.  **(Trigger Member Set Position Above)** |

| ’247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position.  **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).  **(Disconnector Hook Engaged)** |

| **’247 Patent Claim 15** | **First Infringing Device (Atrius Forced Reset Selector)** |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Atrius Forced Reset Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Atrius Forced Reset Selector, shown in yellow, in fire control mechanism pocket)<br><br>**(Atrius Development Forced Reset Selector Cam with Lobe and Lever)** |

<table>
<tr><th>’247 Patent Claim 15</th><th>First Infringing Device (Atrius Forced Reset Selector)</th></tr>
<tr><td>said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,</td><td>The cam is movable between a first position and a second position.<br><br>(Cam and Lobe First Position Above)<br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br>(Cam and Lobe Second Position Above)</td></tr>
</table>

| '247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| whereupon in a standard semi-automatic mode, said cam is in said first position, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position.  |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook.  |

| ’247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm  |

<table>
<tr><th>’247 Patent Claim 15</th><th>First Infringing Device (Atrius Forced Reset Selector)</th></tr>
<tr><td>whereupon in a forced reset semi-automatic mode,</td><td>When in the forced reset semi-automatic mode,<br></td></tr>
<tr><td>said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook,</td><td>the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.<br></td></tr>
</table>

| ’247 Patent Claim 15 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull said trigger member (Brown) to fire the firearm.  |

48. An exemplary comparison of the Third Infringing Device with claim 15 of the ’247 Patent, when assembled and used as intended, is illustrated in the chart below:

| '247 Patent Claim 15 | Third Infringing Device (Super Safety) |
| --- | --- |
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.  **Super Safety** *See also*, Ex. I, Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).  (Plaintiff-generated renderings of Super Safety here and below) |

<table>
<tr><th>’247 Patent Claim 15</th><th>Third Infringing Device (Super Safety)</th></tr>
<tr><td>to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,</td><td>The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br>(Hammer Set Position Above)<br><br>(Hammer Released Position Above)</td></tr>
</table>

| ’247 Patent Claim 15 | Third Infringing Device (Super Safety) |
| --- | --- |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (Brown) has a sear.  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.  **(Trigger Member Set Position Above)** |

| ’247 Patent Claim 15 | Third Infringing Device (Super Safety) |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position.  **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red).  **(Disconnector Hook Engaged Above)** |

| ’247 Patent Claim 15 | Third Infringing Device (Super Safety) |
| --- | --- |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)  **(Super Safety Cam with Lobe and Lever)** |

<table>
<tr><th>’247 Patent Claim 15</th><th>Third Infringing Device (Super Safety)</th></tr>
<tr><td>said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,</td><td>The cam is movable between a first position and a second position.<br><br>(Cam and Lobe First Position Above)<br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br>(Cam and Lobe Second Position Above)</td></tr>
</table>

| ’247 Patent Claim 15 | Third Infringing Device (Super Safety) |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,  |
| said cam is in said first position, | the cam is in the first position.  |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook.  |

<table>
<tr><th>’247 Patent Claim 15</th><th>Third Infringing Device (Super Safety)</th></tr>
<tr><td>and thereafter the bolt carrier moves forward into battery,</td><td>Thereafter, the bolt carrier moves forward into battery,<br></td></tr>
<tr><td>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and</td><td>at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br></td></tr>
</table>

| ’247 Patent Claim 15 | Third Infringing Device (Super Safety) |
|---|---|
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode,  |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.  |

| ’247 Patent Claim 15 | Third Infringing Device (Super Safety) |
|---|---|
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member (Brown) to fire the firearm.  |

49. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’247 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the First and Third Infringing Devices. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/atrius-development-forced-reset-selector.html?_iv_code=6P5-FRX-ARTD1-ADG-FRS-AMBI and https://www.opticsplanet.com/mars-trigger-position-ar-frt-super-safety.html) that informs customers to install the devices into an AR15:

### Product Info for Atrius Development Ambidextrious Forced Reset Selector

Looking for an alternative to a Forced Reset FRT Trigger that won't wear down your AR? Then the Atrius Ambidextrous Forced Reset Selector is the perfect upgrade for your rifle. Also known as the Atrius Super Selektor, this drop-in ambidextrous AR-15 safety selector installs in minutes and instantly provides your firearm with three distinct firing modes: Safety, Semi (standard one-shot), and Full-Semi. The third firing mode of these Gun Parts instantly resets the trigger, allowing for much faster trigger pulls and follow-up shots on target. Atrius Development designed this FRS Safety Selector for use with both right- and left-handed shooters, providing crisp, tactile engagement in any situation.

The Atrius Super Selector is built from heat-treated steel complete with a corrosion-resistant finish, providing long-lasting durability in rain, mud, and other harsh environments. This Forced Reset Selector is compatible with all Mil-Spec AR-15 platforms chambered in .223 Rem, 5.56 NATO, or .300 Blackout. Pick up the Atrius Super Selector today to greatly increase your trigger speed without wearing down your rifle.

### Specifications for Atrius Development Ambidextrious Forced Reset Selector:

| | |
|---|---|
| **Manufacturer:** | Atrius Development |
| **Color:** | Black |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | Steel |
| **Hand:** | Ambidextrous |

### Features of Atrius Development Ambidextrious Forced Reset Selector

- Drop-In Installation Swap out your factory safety in minutes and experience the next level of firearm manipulation (some fitment may be required).
- Runs with Mil-Spec Fire Control Groups Seamlessly integrates with standard AR fire control groups, ensuring flawless function and longevity without modification.
- Hardcore Durability Crafted from heat-treated, 4140 steel and coated in a corrosion-resistant finish, the Atrius FRS laughs in the face of wear and tear. Rain, mud, sweatit eats it all for breakfast.
- Mechanically Leveraged Design Our Forced Reset Selector (FRS) reduces wear on your rifle, preserving your weapons longevity unlike forced-reset triggers (FRTs) that accelerate internal component degradation.
- Ultra-Smooth Engagement Crisp, tactile clicks with no mushy nonsense. Designed for 90-degree throw engagement.
- Positive Positioning Without Slippage Engineered for rock-solid engagement, eliminating the risk of unintentional movement mid-fire, keeping you in full control at all times.
- Aggressive Ergonomics Textured, chamfered, and purpose-built for speed. Your thumb finds the selector instantly, even under stress, with no fumbling, no hesitationjust pure control.

Product Info for Mars Trigger Position AR FRT Super Safety

Professional AR platform safety system with forced reset trigger. Precision-engineered 4140 Alloy Steel construction for maximum durability and reliability. Three-position functionality provides enhanced control and safety options.

WARNING: California`s Proposition 65

Specifications for Mars Trigger Position AR FRT Super Safety:

| | |
|---|---|
| **Manufacturer:** | Mars Trigger |
| **Color:** | Black |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | 4140 Alloy Steel |
| **Trigger Type:** | Force Reset Trigger (FRT) |

Features of Mars Trigger Position AR FRT Super Safety

- FRT Trigger Assembly
- Safety Cam and Lever
- Detent
- Installation Hardware
- 2 Week lead time

Package Contents:

- **Mars Trigger Position AR FRT Super Safety**

What firearm models does the manufacturer say Mars Trigger Position AR FRT Super Safety is compatible with?

The manufacturer says that Mars Trigger Position AR FRT Super Safety is compatible with AR-15

50. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 15 of the ’247 Patent.

51. On information and belief, Defendant also contributes to the infringement of the ’247 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the First and Third Infringing Devices, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’247 Patent.

52. Defendant has engaged in egregious infringement behavior with knowledge of the ’247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’247 Patent and that the ’247 Patent is valid at least through the service and filing of Plaintiffs’ initial complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’247 Patent, nor could it reasonably

or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’247 Patent.

53. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’247 Patent pursuant to 35 U.S.C. § 271.

54. By its actions, Defendant’s infringement of the ’247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

55. By its actions, Defendant’s infringement of the ’247 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

56. Defendant’s infringement of the ’247 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

57. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

58. Plaintiffs have been substantially harmed by Defendant’s infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

## **COUNT II – INFRINGEMENT OF THE ’784 PATENT**

59. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

60. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things,

making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’784 Patent. Such unlicensed products include the First and Third Infringing Devices.

61. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

62. An exemplary comparison of the First Infringing Device with claim 1 of the ’784 Patent, when assembled and used as intended, is illustrated in the chart below:

| **Claim 1: Language** | **First Infringing Device (Atrius Forced Reset Selector)** |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Atrius Development Forced Reset Selector is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br>**Atrius Development Forced Reset Selector** |

<table>
<tr><th>Claim 1: Language</th><th>First Infringing Device (Atrius Forced Reset Selector)</th></tr>
<tr><td></td><td><br>Atrius Development Forced Reset Selector Installed<br>(Plaintiff-generated renderings of Forced Reset Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity)</td></tr>
<tr><td>a locking member that is movable between a first position in which it locks a trigger against pulling movement</td><td>The Atrius Development Forced Reset Selector operates as a locking member and has a first position in which it locks the trigger member against pulling movement.<br><br>Locked First Position</td></tr>
</table>

| Claim 1: Language | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| and a second position where it does not restrict movement of the trigger member, | The Atrius Development Forced Reset Selector is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Atrius Development Forced Reset Selector is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver).   |

| Claim 1: Language | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Atrius Development Forced Reset Selector has an upward extending portion (Yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.  The body portion (Purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, Forced Reset Semi-Automatic) which are positively stopped by a detent (Blue) |

| Claim 1: Language | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| |  Once installed, the body portion (Purple) is movably supported by the lower receiver (grey) using the detent (blue). **(section view of body portion (Purple), lower receiver (Grey), and detent (Blue) for clarity)** |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position.  **Unlocked Second Position** |

| **Claim 1: Language** | **First Infringing Device (Atrius Forced Reset Selector)** |
|---|---|
| the locking member having a body portion that is movably supported | The Atrius Development Forced Reset Selector has a body portion (Purple) that is movably supported by the lower receiver.  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Atrius Development Forced Reset Selector has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow).  |

| Claim 1: Language | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.  |
| and a deflected position. | The lever is now shown deflected independent of the body.  |

63. An exemplary comparison of the Third Infringing Device with claim 1 of the '784 Patent, when assembled and used as intended, is illustrated in the chart below:

| **’784 Patent Claim 1** | **Third Infringing Device (Super Safety)** |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device.<br><br><br>**Super Safety**<br>*See also,* Ex. I, Super Safety Guide at 12 |

| ’784 Patent Claim 1 | Third Infringing Device (Super Safety) |
| --- | --- |
| | <br>**Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity)<br><br>“The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group.” Ex. I, Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

| ’784 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| |  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| ’784 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| |   |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier.  |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |

| ’784 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| |  **Unlocked Second Position** |

64. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’784 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the First and Third Infringing Devices. One example of this is the promotional material found on Defendant’s website (https://www.opticsplanet.com/atrius-development-forced-reset-selector.html?_iv_code=6P5-FRX-ARTD1-ADG-FRS-AMBI and https://www.opticsplanet.com/mars-trigger-position-ar-frt-super-safety.html) that informs customers to install the devices into an AR15:

### Product Info for Atrius Development Ambidextrious Forced Reset Selector

Looking for an alternative to a Forced Reset FRT Trigger that won't wear down your AR? Then the Atrius Ambidextrous Forced Reset Selector is the perfect upgrade for your rifle. Also known as the Atrius Super Selektor, this drop-in ambidextrous AR-15 safety selector installs in minutes and instantly provides your firearm with three distinct firing modes: Safety, Semi (standard one-shot), and Full-Semi. The third firing mode of these Gun Parts instantly resets the trigger, allowing for much faster trigger pulls and follow-up shots on target. Atrius Development designed this FRS Safety Selector for use with both right- and left-handed shooters, providing crisp, tactile engagement in any situation.

The Atrius Super Selector is built from heat-treated steel complete with a corrosion-resistant finish, providing long-lasting durability in rain, mud, and other harsh environments. This Forced Reset Selector is compatible with all Mil-Spec AR-15 platforms chambered in .223 Rem, 5.56 NATO, or .300 Blackout. Pick up the Atrius Super Selector today to greatly increase your trigger speed without wearing down your rifle.

### Specifications for Atrius Development Ambidextrious Forced Reset Selector:

| | |
|---|---|
| **Manufacturer:** | Atrius Development |
| **Color:** | Black |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | Steel |
| **Hand:** | Ambidextrous |

### Features of Atrius Development Ambidextrious Forced Reset Selector

- Drop-In Installation Swap out your factory safety in minutes and experience the next level of firearm manipulation (some fitment may be required).
- Runs with Mil-Spec Fire Control Groups Seamlessly integrates with standard AR fire control groups, ensuring flawless function and longevity without modification.
- Hardcore Durability Crafted from heat-treated, 4140 steel and coated in a corrosion-resistant finish, the Atrius FRS laughs in the face of wear and tear. Rain, mud, sweatit eats it all for breakfast.
- Mechanically Leveraged Design Our Forced Reset Selector (FRS) reduces wear on your rifle, preserving your weapons longevity unlike forced-reset triggers (FRTs) that accelerate internal component degradation.
- Ultra-Smooth Engagement Crisp, tactile clicks with no mushy nonsense. Designed for 90-degree throw engagement.
- Positive Positioning Without Slippage Engineered for rock-solid engagement, eliminating the risk of unintentional movement mid-fire, keeping you in full control at all times.
- Aggressive Ergonomics Textured, chamfered, and purpose-built for speed. Your thumb finds the selector instantly, even under stress, with no fumbling, no hesitationjust pure control.

### Product Info for Mars Trigger Position AR FRT Super Safety

Professional AR platform safety system with forced reset trigger. Precision-engineered 4140 Alloy Steel construction for maximum durability and reliability. Three-position functionality provides enhanced control and safety options.

WARNING: California`s Proposition 65

### Specifications for Mars Trigger Position AR FRT Super Safety:

| | |
|---|---|
| **Manufacturer:** | Mars Trigger |
| **Color:** | Black |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | 4140 Alloy Steel |
| **Trigger Type:** | Force Reset Trigger (FRT) |

### Features of Mars Trigger Position AR FRT Super Safety

- FRT Trigger Assembly
- Safety Cam and Lever
- Detent
- Installation Hardware
- 2 Week lead time

### Package Contents:

- **Mars Trigger Position AR FRT Super Safety**

### What firearm models does the manufacturer say Mars Trigger Position AR FRT Super Safety is compatible with?

The manufacturer says that Mars Trigger Position AR FRT Super Safety is compatible with AR-15

65. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

66. On information and belief, Defendant also contributes to the infringement of the '784 patent by others, including its customers. Acts by Defendant that contribute to the

infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the First and Third Infringing Devices, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’784 Patent.

67. Defendant has engaged in egregious infringement behavior with knowledge of the ’784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’784 Patent and that the ’784 Patent is valid at least through the service and filing of Plaintiffs’ initial complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’784 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’784 Patent.

68. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’784 Patent pursuant to 35 U.S.C. § 271.

69. By its actions, Defendant’s infringement of the ’784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

70. By its actions, Defendant’s infringement of the ’784 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

71. Defendant’s infringement of the ’784 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

73. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '538 PATENT

74. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 patent. Such unlicensed products include the Third Infringing Device.

76. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

77. An exemplary comparison of the Third Infringing Device, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart below:

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| 1. A safety mechanism for a firearm comprising: | The Super Safety is part of a forced reset trigger mechanism installed into a firearm receiver in place of a standard safety.<br><br>**(Super Safety)**<br>Ex. I, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12.<br><br>**(Super Safety Installed)**<br>(Plaintiff-generated renderings of Super Safety here and below; cam selector and bolt carrier shown in section view for clarity) |

| **Claim 1: Language** | **Third Infringing Device (Super Safety)** |
| --- | --- |
| a cam selector; | The Super Safety includes a dual mode cam selector that allows for selection of safe, active reset, and passive reset modes.<br><br>**Dual Mode Cam Selector**<br>Ex. I, Super Safety Guide at 1<br><br> |

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| a lever; | The Super Safety has a lever **(Pink)** extending upward from the cam selector.   |
| a trigger; | The cam selector operates on a trigger. **(Brown)**  |
| the cam selector comprising a first end, a second end, a top side, and a bottom side; | The Super Safety dual mode cam selector has two ends, a top side, and a bottom side as illustrated below.   |

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| the cam selector comprising a longitudinal slot positioned on the top side of the cam selector; | The Super Safety dual mode cam selector comprises a longitudinal slot that is positioned on the top side and extends along the cam selector.   |
| the lever comprising a proximal end and a distal end; | The Super Safety lever **(Pink)** has a proximal end and a distal end, as illustrated below.   |

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| the longitudinal slot being configured to receive the proximal end of the lever; | The longitudinal slot on the top side of the cam selector **(Yellow)** is configured to receive the proximal end of the lever **(Pink)**.  Ex. I, Super Safety Guide at 12     **(Super Safety Installed)** |

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| the cam selector further comprising a first recess and a second recess on the bottom side of the cam selector; | The Super Safety dual mode cam selector has a first recess and a second recess on the bottom side of the cam.<br><br> |

<table>
<tr><th>Claim 1: Language</th><th>Third Infringing Device (Super Safety)</th></tr>
<tr><td>the trigger comprising a first trigger tail portion;</td><td>The Super Safety dual mode trigger has a first trigger tail portion, shown in the red box below.<br><br>Ex. I, Super Safety Guide at 10.<br></td></tr>
<tr><td>the cam selector being configured to operate between a first mode, a second mode, and a third mode;</td><td>The Super Safety dual mode cam is operable in three modes: (1) passive reset (standard semi-automatic) (2) active reset, and (3) safe. Super Safety Guide at 1.</td></tr>
</table>

| | |
|---|---|
| wherein the first mode of the cam selector is configured to allow the first trigger tail portion to be movable within the first recess, | The Super Safety dual mode cam selector is operable in standard semi-automatic mode, in which the first trigger tail aligns with the first recess of the cam.   **(Standard Semi-Automatic Mode)**<br><br>When the cam selector is in the first mode, the first trigger tail portion is movable within the first recess of the cam.  **(Super Safety Installed)** |

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| |  (Super Safety Installed, Trigger Pulled, Lever and Cam Rotated)   |

| **Claim 1: Language** | **Third Infringing Device (Super Safety)** |
|---|---|
| wherein the second mode of the cam selector is configured to allow the first trigger tail portion to engage the second recess | The Super Safety dual mode cam selector is operable in active reset mode, in which the first trigger tail aligns with the second recess of the cam.   **(Active Reset Mode)** |

| | |
|---|---|
| and be moved down by a cam portion of the second recess when the cam selector rotates, | In the second mode, when the cam is rotated by the lever, the cam selector portion of the second recess moves the first trigger tail portion down.<br><br>**(Super Safety Installed, Trigger Pulled)**<br><br>**(Super Safety Installed, Lever and Cam Rotated)** |

| Claim 1: Language | Third Infringing Device (Super Safety) |
|---|---|
| |  |
| and wherein the third mode of the cam selector is configured to prevent the trigger from being pulled. | The Super Safety dual mode cam is operable in safe mode, in which the first trigger tail portion does not align with a recess in the cam. The trigger is not movable within a recess of the cam, and the cam therefore prevents the trigger from being pulled.<br><br> |

78. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’538 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Third Infringing Device while selling products. One example of this is the promotional material found on Defendant’s website (https://www.opticsplanet.com/mars-trigger-position-ar-frt-super-safety.html) that informs customers to install the devices into an AR15:


Product Info for Mars Trigger Position AR FRT Super Safety

Professional AR platform safety system with forced reset trigger. Precision-engineered 4140 Alloy Steel construction for maximum durability and reliability. Three-position functionality provides enhanced control and safety options.

WARNING: California`s Proposition 65

Specifications for Mars Trigger Position AR FRT Super Safety:

| | |
|---|---|
| **Manufacturer:** | Mars Trigger |
| **Color:** | Black |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | 4140 Alloy Steel |
| **Trigger Type:** | Force Reset Trigger (FRT) |

Features of Mars Trigger Position AR FRT Super Safety

- FRT Trigger Assembly
- Safety Cam and Lever
- Detent
- Installation Hardware
- 2 Week lead time

Package Contents:

- **Mars Trigger Position AR FRT Super Safety**

What firearm models does the manufacturer say Mars Trigger Position AR FRT Super Safety is compatible with?

The manufacturer says that Mars Trigger Position AR FRT Super Safety is compatible with AR-15

79. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least Claim 1 of the ’538 Patent.

80. On information and belief, Defendant also contributes to the infringement of the ’538 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Third Infringing Device, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed

and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’538 Patent.

81. Defendant has engaged in egregious infringement behavior with knowledge of the ’538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’538 Patent and that the ’538 Patent is valid at least through the filing and service of this Amended Complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’538 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’538 Patent.

82. By their actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’538 Patent pursuant to 35 U.S.C. § 271.

83. By their actions, Defendant’s infringement of the ’538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

84. By their actions, Defendant’s infringement of the ’538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

85. Defendant’s infringement of the ’538 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

87. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '159 PATENT

88. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

89. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 Patent. Such unlicensed products include at least the First and Third Infringing Devices.

90. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

91. An exemplary comparison of the First Infringing Device when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| **'159 Patent Claim 1** | **First Infringing Device (Atrius Forced Reset Selector)** |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a | When installed and used as directed, the Atrius Forced Reset Selector is part of a firearm trigger mechanism that uses a bolt means. With the Atrius Forced Reset Selector installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode |

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| second, forced reset semi-automatic mode, the mechanism comprising: | <br>**Atrius Forced Reset Selector**<br>https://atrius.dev/atrius-forced-reset-selector/<br><br>**Atrius Forced Reset Selector (Installed)**<br>(Plaintiff-generated renderings of the Atrius Forced Reset Selector here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control | The Atrius Forced Reset Selector **(Yellow)** is installed in a fire control mechanism pocket of a receiver along with a hammer **(Red)** that has a sear surface and a hook for engaging a disconnector **(Orange)**. |

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| mechanism pocket of a receiver | <br>**(Atrius Forced Reset Selector, installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer **(Red)** pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br>**(Hammer Set Position)** |

| **’159 Patent Claim 1** | **First Infringing Device (Atrius Forced Reset Selector)** |
|---|---|
| | <br>**(Hammer Released Position)** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and | The Atrius Forced Reset Selector **(Yellow)** is installed with a trigger member **(Brown)** in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br>**(Trigger Member Set Position)** |

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| released positions, |  **(Trigger Member Released Position)** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member **(Brown)** and sear surface of the hammer **(Red)** are in engagement when the hammer and trigger member are in their set positions.   **(Trigger Member and Hammer Member Set Position)** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member **(Brown)** and sear catch surface of the hammer **(Red)** are out of engagement in the released position. |

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| |   **(Trigger Member and Hammer Member Released Positions)** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector **(Orange)** is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer **(Red)**.  **(Disconnector Hook Engaged Above)** |
| a cam having a cam lobe and adapted to be movably mounted in the | The Atrius Forced Reset Selector has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control |

<table>
<tr><th>’159 Patent Claim 1</th><th>First Infringing Device (Atrius Forced Reset Selector)</th></tr>
<tr><td>fire control mechanism pocket,</td><td>mechanism pocket. (See image above depicting Atrius Forced Reset Selector, shown in yellow, in fire control mechanism pocket)<br><br><br>(Atrius Forced Reset Selector Cam with Lobe and Lever)</td></tr>
<tr><td>the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position,</td><td>The cam is movable between a first position and a second position.<br><br>(Cam and Lobe First Position)<br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.</td></tr>
</table>

<table>
<tr><th>’159 Patent Claim 1</th><th>First Infringing Device (Atrius Forced Reset Selector)</th></tr>
<tr><td></td><td><br>(Cam and Lobe Second Position)</td></tr>
<tr><td>whereupon in the first mode,<br><br>rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook,</td><td>While in the first (standard semi-automatic) mode,<br><br>(Cam in the First (Semi-Automatic) Mode)<br>Rearward movement of the bolt means causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook.</td></tr>
</table>

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| |  **(Disconnector Hook Catches the Hammer)** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,  |

<table>
<tr><th>’159 Patent Claim 1</th><th>First Infringing Device (Atrius Forced Reset Selector)</th></tr>
<tr><td></td><td><br>(Pressure on Trigger Member Prevents Reset)</td></tr>
<tr><td>at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and</td><td>at which time a user must manually reduce pressure on the trigger member (Brown) to free the hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>(Reduced Pressure on Trigger Member Allows Reset)</td></tr>
<tr><td>whereupon in a second mode,</td><td>When in the second (forced reset semi-automatic) mode,</td></tr>
</table>

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| |  **(Cam in the Second (Forced-Reset Semi-Automatic) Mode)** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** and the cam to force the trigger member toward the reset position such that the disconnector **(Orange)** hook is prevented from holding the hammer hook.  |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| ’159 Patent Claim 1 | First Infringing Device (Atrius Forced Reset Selector) |
|---|---|
| |  |
| at which time the user can pull the trigger member to fire the firearm. | at which time the user can pull the trigger member **(Brown)** to fire the firearm without having to first release pressure on the trigger member.  |

92. An exemplary comparison of the Third Infringing Device when assembled and used as intended, with claim 1 of the ’159 Patent is illustrated in the chart below

| **’159 Patent Claim 1** | **Third Infringing Device (Super Safety)** |
| --- | --- |
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism that uses a bolt means. With the Super Safety installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode<br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) (“Super Safety Guide”) at 12<br><br>**Super Safety (Installed)**<br>(Plaintiff-generated renderings of the Super Safety here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control | The Super Safety **(Yellow)** is installed in a fire control mechanism pocket of a receiver along with a hammer **(Red)** that has a sear surface and a hook for engaging a disconnector **(Orange)**. |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| mechanism pocket of a receiver |   **Super Safety (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer **(Red)** pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.   **(Hammer Set Position)** |

| '159 Patent Claim 1 | Third Infringing Device (Super Safety) |
| --- | --- |
| |  **(Hammer Released Position)** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br>between set and | The Super Safety **(Yellow)** is installed with a trigger member **(Brown)** in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br> **(Trigger Member Set Position)** |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| released positions, |  **(Trigger Member Released Position)** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member **(Brown)** and sear surface of the hammer **(Red)** are in engagement when the hammer and trigger member are in their set positions.   **(Trigger Member and Hammer Member Set Position)** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member **(Brown)** and sear catch surface of the hammer **(Red)** are out of engagement in the released position. |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| | <br>**(Trigger Member and Hammer Member Released Positions)** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector **(Orange)** is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer **(Red)**.<br><br>**(Disconnector Hook Engaged Above)** |
| a cam having a cam lobe and adapted to be movably mounted in the | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| fire control mechanism pocket, | <br>**(Super Safety Cam with Lobe and Lever)** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br>**(Cam and Lobe First Position)**<br>In the second position, the cam lobe forces the trigger member **(Brown)** toward the set position when the cam is in the forced reset semi-automatic mode. |

| '159 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| |  **(Cam and Lobe Second Position)** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,  |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** such that the disconnector **(Orange)** hook catches the hammer hook. |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
| --- | --- |
| |  **(Disconnector Hook Catches the Hammer)** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,  |

| **’159 Patent Claim 1** | **Third Infringing Device (Super Safety)** |
|---|---|
| | <br>**(Pressure on Trigger Member Prevents Reset)** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | at which time a user must manually reduce pressure on the trigger member **(Brown)** to free the hammer **(Red)** from the disconnector **(Orange)** to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>**(Reduced Pressure on Trigger Member Allows Reset)** |
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode, |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
| --- | --- |
| |  |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** and the cam to force the trigger member toward the reset position such that the disconnector **(Orange)** hook is prevented from holding the hammer hook.  |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| ’159 Patent Claim 1 | Third Infringing Device (Super Safety) |
|---|---|
| |  |
| at which time the user can pull the trigger member to fire the firearm. | at which time the user can pull the trigger member **(Brown)** to fire the firearm without having to first release pressure on the trigger member.  |

93. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’159 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the First and Third Infringing Devices. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/atrius-development-forced-reset-selector.html?_iv_code=6P5-FRX-ARTD1-ADG-FRS-AMBI and https://www.opticsplanet.com/mars-trigger-position-ar-frt-super-safety.html) that informs customers to install the devices into an AR15:

### Product Info for Atrius Development Ambidextrious Forced Reset Selector

Looking for an alternative to a Forced Reset FRT Trigger that won't wear down your AR? Then the Atrius Ambidextrous Forced Reset Selector is the perfect upgrade for your rifle. Also known as the Atrius Super Selektor, this drop-in ambidextrous AR-15 safety selector installs in minutes and instantly provides your firearm with three distinct firing modes: Safety, Semi (standard one-shot), and Full-Semi. The third firing mode of these Gun Parts instantly resets the trigger, allowing for much faster trigger pulls and follow-up shots on target. Atrius Development designed this FRS Safety Selector for use with both right- and left-handed shooters, providing crisp, tactile engagement in any situation.

The Atrius Super Selector is built from heat-treated steel complete with a corrosion-resistant finish, providing long-lasting durability in rain, mud, and other harsh environments. This Forced Reset Selector is compatible with all Mil-Spec AR-15 platforms chambered in .223 Rem, 5.56 NATO, or .300 Blackout. Pick up the Atrius Super Selector today to greatly increase your trigger speed without wearing down your rifle.

### Specifications for Atrius Development Ambidextrious Forced Reset Selector:

| | |
|---|---|
| **Manufacturer:** | Atrius Development |
| **Color:** | Black |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | Steel |
| **Hand:** | Ambidextrous |

### Features of Atrius Development Ambidextrious Forced Reset Selector

- Drop-In Installation Swap out your factory safety in minutes and experience the next level of firearm manipulation (some fitment may be required).
- Runs with Mil-Spec Fire Control Groups Seamlessly integrates with standard AR fire control groups, ensuring flawless function and longevity without modification.
- Hardcore Durability Crafted from heat-treated, 4140 steel and coated in a corrosion-resistant finish, the Atrius FRS laughs in the face of wear and tear. Rain, mud, sweatit eats it all for breakfast.
- Mechanically Leveraged Design Our Forced Reset Selector (FRS) reduces wear on your rifle, preserving your weapons longevity unlike forced-reset triggers (FRTs) that accelerate internal component degradation.
- Ultra-Smooth Engagement Crisp, tactile clicks with no mushy nonsense. Designed for 90-degree throw engagement.
- Positive Positioning Without Slippage Engineered for rock-solid engagement, eliminating the risk of unintentional movement mid-fire, keeping you in full control at all times.
- Aggressive Ergonomics Textured, chamfered, and purpose-built for speed. Your thumb finds the selector instantly, even under stress, with no fumbling, no hesitationjust pure control.

Product Info for Mars Trigger Position AR FRT Super Safety

Professional AR platform safety system with forced reset trigger. Precision-engineered 4140 Alloy Steel construction for maximum durability and reliability. Three-position functionality provides enhanced control and safety options.

WARNING: California`s Proposition 65

Specifications for Mars Trigger Position AR FRT Super Safety:

| | |
|---|---|
| **Manufacturer:** | Mars Trigger |
| **Color:** | Black |
| **Gun Model:** | AR-15 |
| **Fabric/Material:** | 4140 Alloy Steel |
| **Trigger Type:** | Force Reset Trigger (FRT) |

Features of Mars Trigger Position AR FRT Super Safety

- FRT Trigger Assembly
- Safety Cam and Lever
- Detent
- Installation Hardware
- 2 Week lead time

Package Contents:

- **Mars Trigger Position AR FRT Super Safety**

What firearm models does the manufacturer say Mars Trigger Position AR FRT Super Safety is compatible with?

The manufacturer says that Mars Trigger Position AR FRT Super Safety is compatible with AR-15

94. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the ’159 Patent.

95. On information and belief, Defendant also contributes to the infringement of the ’159 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the First and Third Infringing Devices, such as the cam and lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’159 Patent.

96. Defendant has engaged in egregious infringement behavior with knowledge of the ’159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’159 Patent and that the ’159 Patent is valid at least through the service and filing of this complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’159 Patent, nor could it reasonably or subjectively

believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’159 Patent.

97. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’159 Patent pursuant to 35 U.S.C. § 271.

98. By its actions, Defendant’s infringement of the ’159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

99. By its actions, Defendant’s infringement of the ’159 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

100. Defendant’s infringement of the ’159 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

101. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

102. Plaintiffs have been substantially harmed by Defendant’s infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

**COUNT V – INFRINGEMENT OF THE ’223 PATENT**

103. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

104. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents, by among other things,

making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’223 patent. Such unlicensed products include the Second Infringing Device.

105. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’223 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

106. An exemplary comparison of the Second Infringing Device with Claim 4 of the ’223 patent, when assembled and used as intended, is illustrated in the chart below:

| **’223 Patent Claim 4** | **Second Infringing Device (Disruptor)** |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Second Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket..   |
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.   |

| ’223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Second Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.     **(Plaintiff–generated renderings of the Partisan Disruptor here and below)** |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Second Infringing Device includes a hammer **(Blue)** with a sear notch and is mounted in the housing to pivot on a transverse axis. |

| ’223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| between set and |    **(Set position)** |
| released positions; |  |

| **’223 Patent Claim 4** | **Second Infringing Device (Disruptor)** |
| --- | --- |
| | **(Released position)** |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br>between set<br><br>and released positions, | The Second Infringing Device has a trigger member **(Green)** that has a sear and is mounted in a housing to pivot on a transverse axis.<br><br>**(Set position)**<br><br>**(Released position)** |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)** |

<table>
<tr><th>’223 Patent Claim 4</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td></td></tr>
<tr><td>the contact causing the trigger member to be forced to the set position;</td><td>The hammer (Blue) pivots rearward causing the trigger (Green) to be forced to the set position.<br></td></tr>
</table>

| ’223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |  |
| a locking bar pivotally mounted in the housing | The Second Infringing Device includes a locking bar **(Red)** that is pivotally mounted in the housing.   |
| and spring biased toward a first position<br>in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |

| ’223 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| | <br>**(First position mechanically blocked)** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. |
| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.<br> |

107. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’223 patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Device. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:


opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html

**Is there an ambi safety for this for us lefties???**
An Ambidextrous Safety Selector is slated to be "Coming Soon" from Partisan Triggers.
https://partisantriggers.com/parts/
by PanheadDude, Verified Owner, December 27, 2025

View All Q&A You Have a Question? Ask!

Related Reviews

- All Partisan Triggers Gun Parts Reviews
- All Gun Parts Reviews
- All Partisan Triggers Reviews
- All Customer Product Reviews

Product Info for Partisan Triggers The Disruptor Rifle Trigger

The Disruptor is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

Specifications for Partisan Triggers The Disruptor Rifle Trigger:

| | |
|---|---|
| **Manufacturer:** | Partisan Triggers |
| **Fabric/Material:** | 4140 Chrome Moly Steel |
| **Trigger Shape:** | Curved |
| **Trigger Pull Weight:** | 3.75 - 4.1 lb |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Gun Type:** | Rifle |

Features of Partisan Triggers The Disruptor Rifle Trigger

- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- Compatible with most lowers; anti-walk pins recommended.
- Requires a minimum H2 (recommend H3) carbine buffer weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20 A2 stocks.
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

Package Contents:

- **Partisan Triggers The Disruptor Rifle Trigger**
- Anti-Walk Pins
- 3 Pos. Safety

What firearm models does the manufacturer say Partisan Triggers The Disruptor Rifle Trigger is compatible with?

The manufacturer suggests that Partisan Triggers The Disruptor Rifle Trigger is compatible with AR-15

108. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 4 of the '223 Patent.

109. On information and belief, Defendant also contributes to the infringement of the '223 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Second Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '223 Patent.

110. Defendant has engaged in egregious infringement behavior with knowledge of the ’223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’223 Patent and that the ’223 Patent is valid at least through the service and filing of Plaintiffs’ initial complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’223 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’223 Patent.

111. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’223 Patent pursuant to 35 U.S.C. § 271.

112. By its actions, Defendant’s infringement of the ’223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

113. By its actions, Defendant’s infringement of the ’223 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

114. Defendant’s infringement of the ’223 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

115. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

116. Plaintiffs have been substantially harmed by Defendant’s infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VI – INFRINGEMENT OF THE '003 PATENT**

117. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

118. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Second Infringing Device.

119. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to Claim 4, literally and/or under the doctrine of equivalents.

120. An exemplary comparison of the Second Infringing Device with claim 4 of the '003 patent, when assembled and used as intended, is illustrated in the chart below:

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Second Infringing Device is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Second Infringing Device includes a housing (Black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

<table>
<tr><th>’003 Patent Claim 4</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td>


The Second Infringing Device is sold with hammer and trigger pins.


</td></tr>
<tr><td>a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin</td><td>The Second Infringing Device includes a hammer (Blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.</td></tr>
</table>

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
| --- | --- |
| between set and |  **(Plaintiff-generated renderings of the Partisan Disruptor here and below)**  **(Set position)** |

| ’003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **(Released position)** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br><br>between set | The Second Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the housing to pivot on the trigger member pin  **(Set position)** |

<table>
<tr><th>’003 Patent Claim 4</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td>and released positions,</td><td><br>(Released position)</td></tr>
<tr><td>said trigger member having a surface positioned to be contacted by a surface of said hammer</td><td>The trigger member (Green) has a surface positioned to be contacted by a surface of the hammer (Blue)<br><br></td></tr>
<tr><td>during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,</td><td>The hammer (Blue) pivots rearward causing the trigger (Green) to be forced to the set position.</td></tr>
</table>

| '003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| |   |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  |

| ’003 Patent Claim 4 | Second Infringing Device (Disruptor) |
| --- | --- |
| and are out of engagement in said released positions of said hammer and trigger member, | **(Set position)**<br>The sear and sear catch are out of engagement in the released position<br><br>**(Released position)** |
| a disconnector having a hook for engaging said hammer | The Second Infringing Device has a disconnector **(Orange)** that has a hook for engaging the hammer **(Blue)** hook<br><br> |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger **(Green)** member pin |

<table>
<tr><th>’003 Patent Claim 4</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td></td></tr>
<tr><td>a locking member mounted in said housing to pivot on a transverse locking member pin,</td><td>The Second Infringing Device has a locking member (Red) that is mounted in the housing and it pivots on a transverse locking member pin<br></td></tr>
<tr><td>said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position</td><td>When the locking bar (Red) is in the first position, the locking member blocks the trigger (Green) from being pulled</td></tr>
</table>

<table>
<tr><th>’003 Patent Claim 4</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td><br>(First position mechanically blocked)</td></tr>
<tr><td>and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,</td><td>When the locking bar (Red) is in the second position, it does not prevent the trigger (Green) from being pulled<br><br>(Second position not mechanically blocked)</td></tr>
<tr><td>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and</td><td>The locking member (Red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.</td></tr>
</table>

| ’003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Second Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.   |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook  **(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said | When the Second Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position. |

| ’003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| trigger member to be forced to said set position, | <br>**(Trigger pulled to the rear, hammer first touches the trigger)**<br><br>**(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook,<br><br>. | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook |

| ’003 Patent Claim 4 | Second Infringing Device (Disruptor) |
|---|---|
| | <br>**(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger<br> |

121. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’003 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing

Device. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:


opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html

**Is there an ambi safety for this for us lefties???**
An Ambidextrous Safety Selector is slated to be "Coming Soon" from Partisan Triggers.
https://partisantriggers.com/parts/
by PanheadDude, Verified Owner, December 27, 2025

View All Q&A    You Have a Question? Ask!

Related Reviews

- All Partisan Triggers Gun Parts Reviews
- All Gun Parts Reviews
- All Partisan Triggers Reviews
- All Customer Product Reviews

Product Info for Partisan Triggers The Disruptor Rifle Trigger

The Disruptor is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

Specifications for Partisan Triggers The Disruptor Rifle Trigger:

| | |
|---|---|
| **Manufacturer:** | Partisan Triggers |
| **Fabric/Material:** | 4140 Chrome Moly Steel |
| **Trigger Shape:** | Curved |
| **Trigger Pull Weight:** | 3.75 - 4.1 lb |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Gun Type:** | Rifle |

Features of Partisan Triggers The Disruptor Rifle Trigger

- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- Compatible with most lowers; anti-walk pins recommended.
- Requires a minimum H2 (recommend H3) carbine buffer weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20 A2 stocks.
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

Package Contents:

- **Partisan Triggers The Disruptor Rifle Trigger**
- Anti-Walk Pins
- 3 Pos. Safety

What firearm models does the manufacturer say Partisan Triggers The Disruptor Rifle Trigger is compatible with?

The manufacturer suggests that Partisan Triggers The Disruptor Rifle Trigger is compatible with AR-15

122. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 4 of the '003 Patent.

123. On information and belief, Defendant also contributes to the infringement of the '003 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Second Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '003 Patent.

124. Defendant has engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information

and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the ’003 Patent and that the ’003 Patent is valid at least through the service and filing of Plaintiffs’ initial complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’003 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’003 Patent.

125. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’003 Patent pursuant to 35 U.S.C. § 271.

126. By its actions, Defendant’s infringement of the ’003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

127. By its actions, Defendant’s infringement of the ’003 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

128. Defendant’s infringement of the ’003 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

129. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

130. Plaintiffs have been substantially harmed by Defendant’s infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

## COUNT VII – INFRINGEMENT OF THE ’336 PATENT

131. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

132. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’336 patent. Such unlicensed products include the Second Infringing Device.

133. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’336 patent, including but not limited to Claim 3, literally and/or under the doctrine of equivalents.

134. An exemplary comparison of the Second Infringing Device with Claim 3 of the ’336 patent, when assembled and used as intended, is illustrated in the chart below:

| **’336 Patent Claim 3** | **Second Infringing Device (Disruptor)** |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Second Infringing Device is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Second Infringing Device includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. |

| '336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| |  The Infringing Device is sold with hammer and trigger pins.  |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Second Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| between set and | <br><br>**(Plaintiff-generated renderings of the Partisan Disruptor here and below)**<br><br>**(Set position)** |

<table>
<tr><th>’336 Patent Claim 3</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td>released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,</td><td><br>(Released position)</td></tr>
<tr><td>a trigger member having a sear and mounted in said housing to pivot on said trigger member pin<br>between set</td><td>The Second Infringing Device includes a trigger member (Green) that has a sear and is mounted in the housing to pivot on the trigger member pin<br><br>(Set position)</td></tr>
</table>

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| and released positions, |  **(Released position)** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**   |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| |   |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  **(Set position)** |

<table>
<tr><th>’336 Patent Claim 3</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td>and are out of engagement in said released positions of said hammer and trigger member,</td><td>The sear and sear catch are out of engagement in the released position<br><br>(Released position)</td></tr>
<tr><td>a disconnector having a hook for engaging said hammer<br><br>and mounted in said housing to pivot on said trigger member pin,</td><td>The Second Infringing Device has a disconnector (Orange) that has a hook for engaging the hammer (Blue) hook<br><br><br>The disconnect is mounted in the housing to pivot on the trigger (Green) member pin</td></tr>
</table>

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Second Infringing Device has a locking member **(Red)** that is mounted in the housing and it pivots on a transverse locking member pin.   |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled |

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
| --- | --- |
| | <br>**(First position mechanically blocked)** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar **(Red)** is in the second position, it does not prevent the trigger **(Green)** from being pulled.<br><br>**(Second position not mechanically blocked)** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member **(Red)** is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a | The Second Infringing Device includes a safety selector that is mounted in the fire control |

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions..   |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the forced reset semi-automatic position the disconnect **(Orange)** moves to a position that does not allow the disconnector hook to catch the hammer **(Blue)** hook  **(Forced reset semi-automatic position)** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook |

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| pull said trigger member to fire the firearm, and |  **(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Second Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position.  **(Trigger pulled to the rear, hammer first touches the trigger)** |

| ’336 Patent Claim 3 | Second Infringing Device (Disruptor) |
|---|---|
| |  **(Hammer has now caused the trigger to move to the reset position)** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector **(Orange)** hook from catching the hammer **(Blue)** hook  **(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger |

135. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’336 patent.

Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Device. One example of this is the promotional material found on Defendant's website (https://www.opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:


opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html

Is there an ambi safety for this for us lefties???
An Ambidextrous Safety Selector is slated to be "Coming Soon" from Partisan Triggers.
https://partisantriggers.com/parts/
by PanheadDude, Verified Owner, December 27, 2025

View All Q&A
You Have a Question? Ask!

Related Reviews

- All Partisan Triggers Gun Parts Reviews
- All Gun Parts Reviews
- All Partisan Triggers Reviews
- All Customer Product Reviews

Product Info for Partisan Triggers The Disruptor Rifle Trigger

The Disruptor is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

Specifications for Partisan Triggers The Disruptor Rifle Trigger:

| | |
|---|---|
| **Manufacturer:** | Partisan Triggers |
| **Fabric/Material:** | 4140 Chrome Moly Steel |
| **Trigger Shape:** | Curved |
| **Trigger Pull Weight:** | 3.75 - 4.1 lb |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Gun Type:** | Rifle |

Features of Partisan Triggers The Disruptor Rifle Trigger

- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- Compatible with most lowers; anti-walk pins recommended.
- Requires a minimum H2 (recommend H3) carbine buffer weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20 A2 stocks.
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

Package Contents:

- **Partisan Triggers The Disruptor Rifle Trigger**
- Anti-Walk Pins
- 3 Pos. Safety

What firearm models does the manufacturer say Partisan Triggers The Disruptor Rifle Trigger is compatible with?

The manufacturer suggests that Partisan Triggers The Disruptor Rifle Trigger is compatible with AR-15

136. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 3 of the '336 Patent.

137. On information and belief, Defendant also contributes to the infringement of the '336 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Second Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '336 Patent.

138. Defendant has engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service and filing of Plaintiffs' initial complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the '336 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '336 Patent.

139. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

140. By its actions, Defendant's infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

141. By its actions, Defendant's infringement of the '336 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

142. Defendant's infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

143. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

144. Plaintiffs have been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT VIII – INFRINGEMENT OF THE '807 PATENT

145. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

146. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Second Infringing Device.

147. On information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

148. An exemplary comparison of the Second Infringing Device with Claim 1 of the '807 patent, when assembled and used as intended, is illustrated in the chart below:

| **'807 Patent Claim 1** | **Second Infringing Device (Disruptor)** |
|---|---|
| A firearm trigger mechanism comprising: | The Second Infringing Device is a firearm trigger mechanism. |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Second Infringing Device includes a hammer **(Blue)** that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The |

| ’807 Patent Claim 1 | Second Infringing Device (Disruptor) |
| --- | --- |
| | hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br><br>**(Plaintiff-generated renderings of the Partisan Disruptor here and below)** |
| between set and | <br>**(Set position)** |

| ’807 Patent Claim 1 | Second Infringing Device (Disruptor) |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **(Released position)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set | The Second Infringing Device includes a trigger member **(Green)** that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br> **(Set position)** |

| ’807 Patent Claim 1 | Second Infringing Device (Disruptor) |
|---|---|
| and released positions, | <br>**(Released position)** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member **(Green)** has a surface positioned to be contacted by a surface of the hammer **(Blue)**<br><br> |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer **(Blue)** pivots rearward causing the trigger **(Green)** to be forced to the set position |

<table>
<tr><th>’807 Patent Claim 1</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td><br></td></tr>
<tr><td>wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member</td><td>The sear and sear catch are engaged in the set position<br><br>(Set position)</td></tr>
</table>

<table>
<tr><th>’807 Patent Claim 1</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td>and are out of engagement in said released positions of said hammer and trigger member,</td><td>The sear and sear catch are out of engagement in the released position<br><br>(Released position)</td></tr>
<tr><td>a disconnector having a hook for engaging said hammer hook</td><td>The Second Infringing Device has a disconnector (Orange) that has a hook for engaging the hammer (Blue) hook<br><br></td></tr>
<tr><td>and adapted to be mounted in the fire control mechanism pocket to</td><td>The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis</td></tr>
</table>

| ’807 Patent Claim 1 | Second Infringing Device (Disruptor) |
|---|---|
| pivot on a transverse disconnector pivot axis, |  |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The Second Infringing Device has a locking member **(Red)** that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.   |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar **(Red)** is in the first position, the locking member blocks the trigger **(Green)** from being pulled |

<table>
<tr><th>’807 Patent Claim 1</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td><br>(First position mechanically blocked)</td></tr>
<tr><td>and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,<br><br>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and</td><td>When the locking bar (Red) is in the second position, it does not prevent the trigger (Green) from being pulled<br><br>(Second position not mechanically blocked)<br>The locking member (Red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position</td></tr>
<tr><td>a safety selector adapted to be movably mounted in the fire</td><td>The Second Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of</td></tr>
</table>

| ’807 Patent Claim 1 | Second Infringing Device (Disruptor) |
|---|---|
| control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot and the disconnect **(Orange)** hook catches the hammer hook<br><br>**(Standard semi-automatic position)** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Second Infringing Device is in the forced reset semi-automatic position rearward movement of the bolt carrier causes the hammer **(Blue)** to pivot which causes the trigger **(Green)** to be forced to the set position. |

<table>
<tr><th>’807 Patent Claim 1</th><th>Second Infringing Device (Disruptor)</th></tr>
<tr><td></td><td><br>(Trigger pulled to the rear, hammer first touches the trigger)<br><br>(Hammer has now caused the trigger to move to the reset position)</td></tr>
<tr><td>said safety selector preventing said disconnector hook from catching said hammer hook,</td><td>The safety selector prevents the disconnector (Orange) hook from catching the hammer (Blue) hook.</td></tr>
</table>

| ’807 Patent Claim 1 | Second Infringing Device (Disruptor) |
|---|---|
| |  **(Set position)** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger **(Green)** without manually releasing pressure off the trigger.  |

149. On information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the ’807 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Second Infringing Device. One example of this is the promotional material found on Defendant’s website

(https://www.opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html) that informs customers to install the device into an AR15:


opticsplanet.com/partisan-triggers-the-disruptor-rifle-trigger.html

Is there an ambi safety for this for us lefties???
An Ambidextrous Safety Selector is slated to be "Coming Soon" from Partisan Triggers.
https://partisantriggers.com/parts/
by PanheadDude, Verified Owner, December 27, 2025

View All Q&A You Have a Question? Ask!

Related Reviews

- All Partisan Triggers Gun Parts Reviews
- All Gun Parts Reviews
- All Partisan Triggers Reviews
- All Customer Product Reviews

Product Info for Partisan Triggers The Disruptor Rifle Trigger

The Disruptor is an assisted reset trigger descended from the original TacCon 3MR trigger, designed for fast and hassle-free installation on the AR-15 platform. It requires no modification, gunsmithing, or fitting. Built for shooters who value precision and control, it features a three-position safety selector with Safe, Semi- Automatic, and Enhanced Semi-Automatic modes. This versatile trigger delivers a responsive and confident shooting experience while maintaining reliability and safety for users.

Specifications for Partisan Triggers The Disruptor Rifle Trigger:

| | |
|---|---|
| **Manufacturer:** | Partisan Triggers |
| **Fabric/Material:** | 4140 Chrome Moly Steel |
| **Trigger Shape:** | Curved |
| **Trigger Pull Weight:** | 3.75 - 4.1 lb |
| **Gun Make:** | AR Platform |
| **Gun Model:** | AR-15 |
| **Gun Type:** | Rifle |

Features of Partisan Triggers The Disruptor Rifle Trigger

- Tool steel and 4140 chromoly used on all wear surfaces for superior strength, durability, and long service life.
- Compatible with most lowers; anti-walk pins recommended.
- Requires a minimum H2 (recommend H3) carbine buffer weight for firearms with carbine extensions and 16" or shorter barrels, or a standard rifle buffer for 20 A2 stocks.
- Tested beyond 6,000 rounds under a course of fire derived from the USMC M27 IAR evaluation criteria.

Package Contents:

- **Partisan Triggers The Disruptor Rifle Trigger**
- Anti-Walk Pins
- 3 Pos. Safety

What firearm models does the manufacturer say Partisan Triggers The Disruptor Rifle Trigger is compatible with?

The manufacturer suggests that Partisan Triggers The Disruptor Rifle Trigger is compatible with AR-15

150. On information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the ’807 Patent.

151. On information and belief, Defendant also contributes to the infringement of the ’807 patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the Second Infringing Device, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the ’807 Patent.

152. Defendant has engaged in egregious infringement behavior with knowledge of the ’807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendant has known or should have known that its actions constituted and continue

to constitute infringement of the ’807 Patent and that the ’807 Patent is valid at least through the service and filing of Plaintiff’s initial complaint. Defendant could not reasonably or subjectively believe that its actions do not constitute infringement of the ’807 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the ’807 Patent.

153. By its actions, Defendant has injured Plaintiffs and is liable to Plaintiffs for infringement of the ’807 Patent pursuant to 35 U.S.C. § 271.

154. By its actions, Defendant’s infringement of the ’807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

155. By its actions, Defendant’s infringement of the ’807 Patent has damaged and continues to damage Plaintiffs in an amount yet to be determined.

156. Defendant’s infringement of the ’807 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

157. Defendant’s acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

158. Plaintiffs have been substantially harmed by Defendant’s infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendant as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendant;

b. Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e. A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g. An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h. A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: March 30, 2026

Respectfully submitted,

*/s/ Jory M. Hoffman*

Jory M. Hoffman (Illinois Bar No. 6313054)
**FISH & RICHARDSON P.C.**
150 N. Riverside Plaza, Suite 2820
Chicago, IL 60606
E-mail: jmhoffman@fr.com
Tel: (312) 278-2700
Fax: (312) 873-4603

Matthew A. Colvin (admitted *pro hac vice)*
Texas Bar No. 24087331
Carl E. Bruce (admitted *pro hac vice)*
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 7472091

Benjamin J. Christoff (admitted *pro hac vice)*
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1001 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy (admitted *pro hac vice)*
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorneys for Plaintiffs*
***ABC IP, LLC,* and *RARE BREED TRIGGERS, INC.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on March 30, 2026, via the Court's CM/ECF system.

*/s/ Jory M. Hoffman*
Jory M. Hoffman